**Opinion issued July 30, 2026.**



**In the**

# Court of Appeals

**for the**

# First District of Texas

———————————

**NO. 01-23-00852-CR**

———————————

**ALLEN DALE EDWARDS, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1503258**

## MEMORANDUM OPINION

A jury found appellant Allen Dale Edwards guilty of murder and sentenced him to 46 years' imprisonment. TEX. PENAL CODE § 19.02.

In five issues, appellant complains that (1) the trial court made impermissible comments during voir dire; (2) the trial court erred by admitting video evidence that

included statements made by appellant in violation of his Fifth Amendment and statutory rights; (3) the trial court erred by failing to properly charge the jury that the law of self-defense, if applicable, mandates that the jury acquit; (4) the evidence was insufficient to support the jury's negative sudden-passion finding; and (5) the cumulative effect of the trial court's errors rendered the trial fundamentally unfair.

We overrule each of appellant's issues. First, during jury selection, either the trial court's comments were not statutorily proscribed or any improper comments were harmless. Second, any error in the admission of appellant's videotaped statements was harmless. Third, the trial court properly charged the jury that, if it concluded that self-defense applied, it must acquit appellant. Fourth, the evidence is legally and factually sufficient to support the jury's negative sudden-passion finding because there was no evidence that the complainant provoked or acted in concert with an individual who provoked appellant. Fifth and finally, because we do not find any error, appellant's cumulative-error claim fails.

We affirm the trial court's judgment.

## Background

### A. Parties' Relationships

More than a decade before the murder, appellant began dating complainant Keyanna Gardiner. Eventually, they married. At some point after they were married, their relationship soured, complainant began dating Samone Massey, and appellant

2

and complainant divorced. Following the divorce, appellant was awarded custody of his and complainant's two children. Over the next few years, complainant continued to litigate custody of the children and the future of her parental rights, which appellant sought to terminate.

At the same time, appellant, complainant, and Massey fought and suspected each other of petty vandalism and property damage. A Baytown Police Department detective estimated that there had been "17, 18, give or take" police reports filed between appellant, complainant, and Massey. The three accused each other of physical violence, slashed tires, and smashed windows. Criminal charges occasionally materialized, but none ever stuck.

## B.     Events of March 18 and 19, 2016

On the evening of March 18, 2019, Massey and complainant went to a party. After the party, around midnight, Massey, complainant, and others from the party went to a bar. Complainant drank at the bar, and Massey had at least four drinks. Massey and complainant left the bar at 2 a.m., the same time the bar closed, and Massey began driving the couple home.

While driving home, Massey called appellant around 2:45 a.m. Massey "had been drinking" and she "was just upset over everything," the "back and forth between [appellant], me, and [complainant]." During the call, Massey told appellant, "Go ahead and get your child support. Guess what? I'm a kill them hoes." Massey

3

testified at trial that her threat referred to appellant and complainant's children. Massey and appellant cursed each other and, toward the end of the call, appellant told Massey to come over so he could "whoop [her] ass." After the call, appellant began getting ready for work.

Still on her way home from the bar with complainant in the passenger seat, Massey drove to appellant's house in Baytown, Texas. She parked the car in front of appellant's house, grabbed an aerosol can, walked up to a window of appellant's home, and smashed it. After smashing the window, she returned to her vehicle, backed up to turn around, and began driving to her and complainant's home in La Porte, Texas.

Less than 30 seconds after Massey drove away, appellant ran out his front door into the yard. Appellant testified that he saw the car driving away, recognized it as a white SUV, and believed it to be Massey's and complainant's car. Appellant ran back inside, got into his car, pulled out of the driveway, and began driving to La Porte, where he knew Massey and complainant lived. Appellant had a gun in his car.

Only a few minutes later, Massey's and appellant's cars collide, and complainant dies in Massey's passenger seat. Massey and appellant—the only eyewitnesses who testified—differ in their accounts of what happened in the period between appellant leaving his home at 3:28 a.m. and paramedics arriving on the scene at 3:34 a.m. Massey testified that, a few minutes after she had left appellant's

4

house, a vehicle pulled up next to hers and swerved into her car. The vehicle then moved in front of Massey, she hit the back of the vehicle, and the two cars crashed on a flyover toward Fred Hartman bridge. The impact woke complainant, who asked Massey, "What's going on?" After the crash, Massey saw appellant exit the other vehicle, a gun in his hands. Massey heard gunshots and "blacked out" in the car. She never heard another word from complainant. When Massey regained consciousness, a paramedic was at her car door. The paramedic treated Massey's face, which was bleeding. Massey did not know how she had injured her face.

Appellant testified that, after leaving his house and driving in the direction of La Porte, he saw the white SUV he recognized outside his home minutes earlier. He pulled up to the SUV and matched its speed. He testified that the SUV swerved into his car. Appellant then grabbed his handgun and fired through his driver's window. In response to counsel's asking at whom appellant was firing, appellant responded, "Samone." Appellant did not know complainant was in the vehicle. After he fired his gun, the white SUV began slowing down, and appellant moved his vehicle in front to, in his words, "stop [Massey] from leaving the area." He saw the white SUV grow larger in his rearview mirror, and the SUV struck the back of his car, twice. Appellant stopped his car, exited with his gun, and fired another shot. He testified that he was not aiming at anything. Appellant threw his gun over the edge of the flyover, but it was later recovered by police.

5

At 3:34 a.m., paramedics arrived. They pronounced complainant deceased at the scene.

## C. Conviction and Punishment

Appellant was charged by indictment with complainant's murder and tried on that charge. After the State and defense rested at trial, the trial court instructed the jury on the law applicable to murder, manslaughter, and the justification of self-defense. The verdict form allowed the jury to find appellant not guilty, guilty of murder, or guilty of manslaughter. The jury found appellant guilty of murder.

The jury also decided punishment. After charging the jury with the law on punishment, the trial court submitted to the jury the special issue of sudden passion, which, if found, reduces the offense of murder from a first-degree to a second-degree felony. The jury returned a negative sudden-passion finding and assessed appellant's punishment at 46 years' imprisonment.

The trial court orally pronounced appellant's sentence and entered a judgment of conviction that conformed to the jury's verdict. This appeal followed.

## Judicial Comments During Voir Dire

In his second issue,[1] appellant contends that, during voir dire, the trial court inappropriately commented on the weight of the evidence and conveyed her opinion

---

[1] We first address appellant's issues that would afford him the greatest relief. *Williams v. State*, 707 S.W.3d 233, 237 n.4 (Tex. Crim. App. 2024).

of the case in violation of article 38.05 of the Texas Code of Criminal Procedure[2]

and the Due Process Clause of the Fourteenth Amendment of the United States

Constitution.[3]

Article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. art. 38.05. This provision "forbids a trial judge from

making, at any stage of the proceeding previous to the return of the verdict, any

remark calculated to convey to the jury his opinion of the case." *Irsan v. State*, 708

---

[2] The right to be tried in a proceeding devoid of improper judicial comments under article 38.05 of the Texas Code of Criminal Procedure is at least a category-two, waiver-only *Marin* right. *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (describing category-two right as "rights of litigants which must be implemented by the system unless expressly waived"), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). The record does not reflect, and the State does not argue, that appellant plainly, freely, and intelligently waived his right to the trial court's compliance with article 38.05. Accordingly, appellant's complaint may be raised for the first time on appeal.

[3] Two of our sister courts of appeals have recently held that the "right to be free from commentary that lessens the prosecution's burden of proof" under the Due Process Clause is likewise a category-two, waiver-only *Marin* right. *See Aguirre v. State*, No. 14-25-00214-CR, ___ S.W.3d ___, 2026 WL 468009, at *7 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, pet. filed); *Tuazon v. State*, 661 S.W.3d 178, 192 (Tex. App.—Dallas 2023, no pet.). We assume, without holding, that appellant may raise his due-process complaint without a trial objection. *See Rodriguez v. State*, 728 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2025, pet. ref'd) (assuming due-process complaint could be raised for first time on appeal but rejecting complaint on merits).

S.W.3d 584, 606 (Tex. Crim. App. 2025) (citation modified), *cert. denied*, 146 S. Ct. 1589 (2026). To establish that the trial court violated article 38.05, an appellant must show that that the trial court's remark in front of the jury was "reasonably calculated to benefit the State or prejudice the defendant's rights." *Id.* (quoting *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017)).

Similarly, to violate the Due Process Clause, a trial court's comments must be improper. *Rodriguez v. State*, 728 S.W.3d 228, 237 (Tex. App.—Houston [1st Dist.] 2025, pet. ref'd) (citing *United States v. Pena*, 24 F.4th 46, 72 (1st Cir. 2022)). A trial court's comment is improper if it expresses partiality. *Id.* (citing *United States v. Marquez-Perez*, 835 F.3d 153, 158 (1st Cir. 2016)). A comment is likewise improper if it "lessens the prosecution's burden of proof." *Aguirre v. State*, No. 14-25-00214-CR, ___ S.W.3d ___, 2026 WL 468009, at *10 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, pet. filed); *see Tuazon v. State*, 661 S.W.3d 178, 194 (Tex. App.—Dallas 2023, no pet.) (holding judicial comments were "reasonably calculated to benefit the State or prejudice the defendant's rights" by equating reasonable-doubt burden with preponderance-of-evidence burden). If the comments are improper, then the complaining party must show "serious prejudice." *Rodriguez*, 728 S.W.3d at 237 (citing *Pena*, 24 F.4th at 72).[4] A comment causes serious

---

[4] The proper standard for reviewing improper judicial comments under the Constitution is unclear. The Texas Court of Criminal Appeals has suggested that an improper comment in front of a jury violates a criminal defendant's due-process

8

prejudice if there is "a reasonable probability that, but for the error, the verdict would have been different." *Id.* (quoting *United States v. Rivera-Rodriguez*, 761 F.3d 105, 112 (1st Cir. 2014)).

Appellant complains that the following comments by the trial court during jury selection violate article 38.05 and the Due Process Clause: (1) the trial court gave a hypothetical that, while demonstrating the concepts of intent, knowledge, and recklessness, conveyed her opinion of the merits of a murder case involving like circumstances and (2) the trial court stated that "manslaughter is basically murder."

---

rights under the federal constitution when the comment "effectively destroy[s] a defendant's constitutional presumption of innocence." *Irsan v. State*, 708 S.W.3d 584, 606 (Tex. Crim. App. 2025) (quoting *United States v. Haywood*, 411 F.2d 555 (5th Cir. 1969) (per curiam)), *cert. denied*, 146 S. Ct. 1589 (2026). In *Irsan*, the Court of Criminal Appeals suggested that the "effectively destroyed" standard mirrors the harm analysis that we apply to errors that violate non-constitutional, statutory rights. *Id.* at 607. In *Rodriguez v. State*, this Court adopted a test for improper judicial comments that incorporates a "serious prejudice" analysis. 728 S.W.3d 228, 237 (Tex. App.—Houston [1st Dist.] 2025, pet. ref'd) (citing *United States v. Pena*, 24 F.4th 46, 72 (1st Cir. 2022)). On its review of judicial comments that violated the Due Process Clause, the Fourteenth Court of Appeals analyzed the comments for constitutional harm under rule 44.2(a) of the Texas Rules of Appellate Procedure. *Aguirre v. State*, No. 14-25-00214-CR, ___ S.W.3d ___, 2026 WL 468009, at *10 (Tex. App.—Houston [14th Dist.] Feb. 19, 2026, pet. filed). The Fifth Court of Appeals held that judicial comments that violate the Due Process Clause are structural error, not subject to a harm analysis. *Tuazon v. State*, 661 S.W.3d 178, 194 (Tex. App.—Dallas 2023, no pet.). Our decision in *Rodriguez*, which relies on federal case law, comports with the Court of Criminal Appeals' directive that, when we choose "to address the merits of a federal claim," our decision "to grant or deny relief must accord with federal law." *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013); *see Rodriguez*, 728 S.W.3d at 234-37 (citing federal cases). In any event, we are bound by our decision in *Rodriguez* and apply it here, and whether we apply a "serious prejudice," "effectively destroyed," or constitutional harm standard under rule 44.2(a), we reach the same result.

In both instances, appellant complains that the comments had the effect of improperly lowering the State's burden to prove murder.

## A. Murder and Manslaughter Hypotheticals

To explain the elements of murder and manslaughter, the trial court offered the following hypothetical to the venire members:

> THE COURT: Let's say that I don't like the [venire member wearing a] purple shirt, but I don't want to kill her. I just want to scare her. All right? So I go down, and I decide I'm going to shoot her in the foot. All right.
>
> And so I take my gun. I point it. I shoot her in the foot. But I don't know the first thing about bullets and how they work or whatever. And I'm not a very good shot at that point, so I end up shooting her in such a way that it — the bullet travels to her heart, and she dies, right? Did I intend to cause her serious bodily injury?
>
> PROSPECTIVE JUROR: Yes.
>
> THE COURT: Yes. Did I do something or take an action that was clearly a danger to life? Wouldn't you say that pointing a gun at someone and shooting them is a danger to life, right? All right.

Appellant complains that the trial court, through this hypothetical, improperly informed the venire panel that, "if someone is shot with a firearm essentially anywhere on their body and death results, that this objectively indicates the shooter intended to hurt that person or for that person to die." In passing, appellant also complains that the trial court "gave a hypothetical involving street racing where a child is hit by a car, having the jury venire agree that that would be manslaughter."

10

Assuming, without deciding, that the trial court's comments violated article 38.05 and the Due Process Clause, we review these errors for harm. *Proenza*, 541 S.W.3d at 801 (holding that error under article 38.05 must be evaluated for non-constitutional harm); *Rodriguez*, 728 S.W.3d at 237-38 (reviewing judicial comments that violate Due Process Clause for "serious prejudice"). A trial court's violation of article 38.05 is harmless if the violation did not affect the defendant's substantial rights. *Proenza*, 541 S.W.3d at 801. When a trial court's comments are improper under the Due Process Clause, we will not reverse the conviction or punishment unless the complaining party can show "serious prejudice," which exists when there is "a reasonable probability that, but for the error, the verdict would have been different." *Rodriguez*, 728 S.W.3d at 237 (quoting *Rivera-Rodriguez*, 761 F.3d at 112). In *Rodriguez*, when evaluating the harmfulness of any error under both article 38.05 and the Due Process Clause, we considered (1) whether the venire panel was properly informed of the presumption of innocence, (2) whether the jury was properly instructed on the burden of proof, (3) whether the comment was repeated or emphasized, and (4) whether the comments were applied to the particular facts of the defendant's case. *Id.* at 234, 238.

Here, the trial court's complained-of comments concern the *mens rea* elements of murder and manslaughter, issues contested at trial. However, that is where the similarities between the trial court's hypotheticals and the facts at issue

11

end. In the trial court's murder hypothetical, the trial court made clear that the actor had decided that she was "going to shoot" the victim in the foot, took aim, and fired. At trial, appellant contested that he intended to shoot complainant or even aimed at her. There was likewise no suggestion that appellant caused complainant's death by striking her with his vehicle, which would have mirrored the trial court's manslaughter hypothetical. Additionally, the trial court's comments were made early in the trial, before the jury was empaneled and long before the jury was read the charge and reached a verdict. After being seated, the jury heard five days of testimony from 17 witnesses. On the sixth day, after both the prosecution and defense rested, the trial court then charged the jury with the applicable law. The State referenced the trial court's "shoot her in the foot" hypothetical once during jury selection but noted that the jury must "unanimously agree that the defendant is guilty beyond a reasonable doubt." This is the State's only reference to the trial court's hypothetical. At no point during trial—including opening statements and closing arguments—did the State emphasize the trial court's comments or suggest that the jury should apply the logic of the trial court's hypotheticals to the evidence presented. Given the difference between the facts in the trial court's hypotheticals and the contested issue at trial, the passage of time between the comments and the verdict, the lack of any emphasis on the comments by the State, and lack of apparent error in the jury charge, we conclude that the trial court's complained-of comments

12

did not affect appellant's substantial rights or cause serious prejudice. Additionally, we would conclude beyond a reasonable doubt that any error in the trial court's complained-of comments did not contribute to appellant's conviction or punishment. Accordingly, any error was harmless.

**B.      Comment on Manslaughter**

Appellant next complains of the trial court's statement to the venire members that, "[M]anslaughter is basically murder." Out of context, the statement is overly simplistic. However, viewed in context, the trial court's comment does not suggest to the jury that they should convict appellant of *murder* if the State proves beyond a reasonable doubt each element of *manslaughter*. The trial court stated, in relevant part:

> Now, sometimes, in this process of having someone charged with something, like in this case, murder, as you go through the evidence, there may be a situation where there's evidence of what we call a lesser included charge. So what will have to happen there is that the charge is, in fact, murder. But as you go through the process, the evidence may shake out where maybe it wasn't really, in this case, intentional, or there wasn't any intent to cause serious bodily injury or a clear act dangerous to life. But someone died, and you think, well, maybe it's because their person — let's just use this — action was reckless. All right.

> So then, the jury could be charged, or instructed in the jury charge, that if they don't find that there is sufficient evidence for murder, then they could consider the lesser — what we call a lesser included charge. In that scenario, it would be manslaughter. All right? *So manslaughter is basically murder.*

You're going to have someone — a life is going to be lost, but it's not going to be intentional. It's not going to fall into the other examples that we have. It's reckless. The behavior is reckless.

(Emphasis added.)

The trial court's explanation overall is consistent with Texas law. Manslaughter is a lesser-included offense of murder and differs from murder only in the respect that a less culpable mental state—recklessness—establishes its commission. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (concluding that manslaughter is a lesser-included offense of murder under section 19.02(b)(2) of the Texas Penal Code); *Schroeder v. State*, 123 S.W.3d 398, 400-01 (Tex. Crim. App. 2003) (noting that manslaughter is a lesser-included offense of murder); *see* TEX. CODE CRIM. PROC. art. 37.09(3) ("An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission."). The trial court correctly stated that, if there is sufficient evidence to raise the issue, the jury may be instructed on a lesser-included offense of murder and, "[i]n that scenario, it would be manslaughter. . . . [A] life is going to be lost, but it's not going to be intentional. . . . It's reckless." The trial court's explanation of manslaughter comports with section 19.04(a) of the Texas Penal Code, which defines the offense of manslaughter, and with *Cavazos*. Appellant has not shown that the trial court's out-of-context remark

was calculated to benefit the State or prejudice appellant's rights or that the remark expressed partiality or lessened the prosecution's burden of proof.

We overrule appellant's second issue.

**Motion to Suppress**

In his third issue, appellant contends that the trial court erred by denying his motion to suppress a video of statements he made to a deputy constable at the scene of the crash. He argues that, when he made those statements, he was subject to a custodial interrogation but was never provided any warnings required by Texas statute and the Fifth Amendment of the United States Constitution. The State argues that appellant was neither in custody nor subject to an interrogation at the time he made the statements he sought to suppress.

**A.      Suppression Hearing**

During the testimony of deputy constable John Pernell, the State sought to admit a video recording from the dash camera of Pernell's patrol vehicle. Pernell was the first law enforcement officer on the scene on March 19, 2016. Pernell testified that, when he arrived, he saw a man—later identified as appellant—in a "physical altercation" with one of the paramedics. After learning that complainant was unresponsive with a gunshot wound, Pernell went to appellant to ask him about the crash and his involvement. Among other things, Pernell asked, "Were you

involved in this?" According to Pernell, appellant answered, "I ran her down." At that point in time, Pernell decided to detain appellant and handcuff him.

Following that portion of Pernell's testimony, the State sought to admit and play for the jury a video that included statements that appellant made while in handcuffs at the scene. Appellant's counsel objected to the video being played to the extent it included statements made by appellant after Pernell placed appellant in handcuffs.

In response to appellant's objection, the trial court held a suppression hearing outside the presence of the jury. During the hearing, Pernell was the only witness to testify. Neither the State nor appellant played the video at the hearing.[5] Pernell confirmed that, "Immediately after he said, quote, 'I ran her down,' is when I decided to place him into handcuffs . . . ." After Pernell handcuffed appellant, he asked appellant, "Did you shoot her then?" Appellant replied, "I chased her down from my house." According to Pernell, he asked the questions "to figure out what happened on the scene." Pernell agreed that, at the time of this question, appellant was not free to leave, but he contended that appellant was not under arrest. Pernell further testified

[5] Barring exceptions not applicable here, our review of a trial court's ruling on a motion to suppress is limited to the evidence adduced at the suppression hearing. *Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *see Taylor v. State*, 509 S.W.3d 468, 482 n.7 (Tex. App.—Austin 2015, pet. ref'd) (reviewing trial court's suppression ruling but not considering video that appellant sought to suppress because video was not played for trial court prior to ruling on motion to suppress).

that he handcuffed appellant because appellant was "very mobile on the scene," Pernell did not know whether appellant was intoxicated, and Pernell had already seen appellant push a paramedic, prompting him "to calm the scene down." Pernell maintained that he had not identified a crime, but he privately suspected that appellant had caused the car collision. Pernell told appellant that appellant was being detained, Pernell did not tell appellant that appellant was being arrested, and Pernell informed appellant that Pernell needed to speak with Baytown police officers.

Following Pernell's testimony during the suppression hearing, appellant's counsel argued, "once [appellant] was asked and once he made a statement that 'I ran her down,' . . . he was in custody . . . ." The State argued that (1) appellant was not in custody because he was not under formal arrest and (2) appellant's statements after being placed in handcuffs were not the result of any interrogation.

The trial court admitted the video, overruling appellant's objection.

## B.    Preservation

As an initial matter, we address whether this complaint has been preserved for our review. TEX. R. APP. P. 33.1(a). The State contends that (1) the complaint on appeal does not match appellant's objection at trial and (2) appellant argued in the trial court only that he was in custody, not that he was interrogated.

We disagree that appellant failed to preserve this complaint for our review. When the State first attempted to introduce and admit the video recording of

17

appellant's statements, appellant's counsel objected: "Judge, I have no objection to anything being played as far as up until . . . when he was detained after he supposedly said he ran her down, according to the police officer, but anything after that I think we'd have to have a hearing[.]" At the close of the suppression hearing, appellant's counsel argued that appellant was in custody once he was placed in handcuffs. During the suppression hearing, both counsel for the State and for appellant questioned Pernell on matters that concerned custody and interrogation. For example, Pernell was examined regarding the precise timing of when he placed appellant in handcuffs, why he detained appellant, whether he told appellant that appellant was under arrest, and what questions he asked appellant following his detention. Given the context of the questioning, appellant's objection was specific enough to put the trial court on notice that appellant objected to admission of any statements resulting from a custodial interrogation. *See Wyborny v. State*, 209 S.W.3d 285, 290 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding imprecise objection that defendant had "right not to respond" was sufficient to preserve complaint under Texas Constitution based on context of case).[6]

---

[6] To the extent appellant argues on appeal that the trial court erred in the admission of Pernell's testimony that, prior to being handcuffed, appellant told Pernell, "I ran her down," we agree with the State that that error is not preserved for our review. Appellant did not object at trial to the State's soliciting that testimony and, in any event, the record is clear that the statement was elicited prior to appellant's detention in response to a non-interrogative question: "Were you involved in this?" *See Jones v. State*, 795 S.W.2d 171, 174 & n.3 (Tex. Crim. App. 1990) (noting that "broad

18

## C. Analysis

The Fifth Amendment of the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Because of that right, the State "may not use any statements stemming from 'custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *Wilkerson v. State*, 173 S.W.3d 521, 526 (Tex. Crim. App. 2005) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Those procedural safeguards take the form of warnings that law enforcement officers must provide before conducting any custodial interrogation. *Miranda*, 384 U.S. at 444. Specifically, the officer must warn a person in custody that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. When an officer fails to provide *Miranda* warnings, the "[u]nwarned statements obtained as a result . . . may not be used as evidence by the State in a criminal proceeding during its case-in-chief." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing *Miranda*, 384 U.S. at 444). Article 38.22 of the Texas Code

---

general questions such as 'what happened' upon arrival at the scene of a crime" fall outside the scope of "interrogation").

19

of Criminal Procedure likewise requires the exclusion of any unwarned statements that result from a custodial interrogation. TEX. CODE CRIM. PROC. art. 38.22.

Appellant contends that his unwarned statement "I chased her down" was the result of a custodial interrogation and that the trial court erred by failing to suppress the video recording of the statement. We do not address whether the trial court erred because any error was harmless. *See Owens v. State*, 473 S.W.3d 812, 816 n.3 (Tex. Crim. App. 2015) (assuming error and finding error harmless). Any error in the admission of a statement that should have been suppressed under *Miranda* is constitutional in nature and requires reversal unless we "determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (reviewing erroneous admission of unwarned statement for constitutional harm). We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Foyt v. State*, 602 S.W.3d 23, 45 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (quoting *Jones*, 119 S.W.3d at 777).

Here, regardless of whether the video that included the statement "I chased her down" should have been suppressed, Pernell had already testified, without objection, that appellant told him "I ran her down" in response to "Were you involved in this?" The former statement is cumulative of the latter. *See Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996) (holding admission of unwarned

20

statement harmless because it was cumulative of properly admitted statement); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that any error in admission of exhibit was harmless in light of proper admission of "very similar" exhibits"). For example, in *Dowthitt*, the Texas Court of Criminal Appeals held harmless the erroneous admission of the appellant's videotaped interview that recounted details the appellant observed at the murder scene. 931 S.W.2d at 263. In concluding the error was harmless, the Court of Criminal Appeals noted the non-erroneous admission of appellant's confession that he was present during the murders: "Compared to appellant's admission that he was there," which was a "crucial, damaging piece of evidence," "the details of what occurred while he was there appear to have little incriminating value." *Id.* Here, the contrast between appellant's two statements is even less stark. Because "chased her down" is cumulative of "ran her down," we hold that any error in the admission of the former did not contribute to appellant's conviction or punishment beyond a reasonable doubt.

We overrule appellant's third issue.

**Jury Charge**

In his fourth issue, appellant contends that the trial court erred by instructing the jury that it "should" rather than "must" or "will" acquit appellant if it found that

21

he acted in self-defense.[7] Appellant complains that the verb "should" is synonymous with "may" and does not convey the mandatory nature of the action to the same extent as "must" or "will."

## A.    Standard of Review and Applicable Law

Jury instructions inform the jury of the applicable law and how to apply it to the facts of the case. *Alcoser v. State*, 663 S.W.3d 160, 164-65 (Tex. Crim. App. 2022). "When self-defense is law applicable to the case, the trial court must inform the jury under what circumstances it should acquit a defendant of an offense based on self-defense." *Id.* at 169; *Mendez v. State*, 545 S.W.3d 548, 556 (Tex. Crim. App. 2018). The Texas Penal Code requires that, if self-defense is submitted to the jury, "the court shall charge that a reasonable doubt on the issue *requires* that the defendant be acquitted." TEX. PENAL CODE § 2.03(d) (emphasis added); *see id.* § 9.02 (stating that justified conduct is defense to prosecution); *id.* § 9.31 (prescribing grounds under which conduct is justified as self-defense).

## B.    Analysis

In its instructions to the jury, the trial court generally used "must" or "will" to dictate to the jury what it was required to do under certain circumstances. For

---

[7]    A criminal defendant may raise jury-charge error for the first time on appeal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). His failure to object in the trial court impacts only how we analyze that error for harm. *Id.*

example, the trial court instructed the jury that, if it made certain findings, "then [it] will find the defendant guilty of murder, as charged in the indictment." The trial court further instructed that, if the jury did not find each element of murder beyond a reasonable doubt or could not agree, then it "will next consider whether the defendant is guilty of the lesser offense of manslaughter," and, if it made certain other findings, "then [it] will find the defendant guilty of manslaughter." The trial court also instructed the jury that it "must" resolve reasonable doubts in favor of the defendant.

When charging the jury on the law of self-defense, the trial court generally used "should" instead of "must" or "will." The relevant portions of those instructions stated:

> In determining the existence of real or apparent danger, you ***should*** consider all the facts and circumstances in evidence before you, . . . and, in considering such circumstances, you ***should*** place yourselves in the [appellant's] position at that time and view them from his standpoint alone.

> Therefore, if you find from the evidence beyond a reasonable doubt that [appellant] did shoot [complainant] with a firearm, as alleged, but you further find from the evidence [certain findings necessary for the application of self-defense], then you ***should*** acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you ***should*** give the defendant the benefit of that doubt and say by your verdict, not guilty.

> If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant,

23

under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against [complainant's] and/or Samone Massey's use or attempted use of unlawful deadly force, then you ***should*** find against the defendant on the issue of self-defense, and say by your verdict, guilty of murder.

(Emphasis added.) Appellant contends that use of the word "should," in contrast to "will" or "must" used in other portions of the instructions, conveys that the jury *may* acquit appellant if it makes certain findings but is not required to do so. In support of his argument, appellant relies on the definitions of "should" in the Merriam-Webster Dictionary and the Cambridge Dictionary. The dictionary definitions quoted by appellant state that the word "should" can be used to express "obligation, propriety, or expediency" and "what is the correct or best thing to do."

This Court has twice rejected the argument that "should" is always or necessarily permissive and constitutes error when used in jury instructions that require mandatory language. In *Marshall v. State*, we concluded that the trial court did not err by using "should" in parts of its self-defense instructions to the jury. No. 01-23-00503-CR, 2025 WL 1759021, at *15 (Tex. App.—Houston [1st Dist.] June 26, 2025, pet. ref'd).[8] In reaching this conclusion, we considered factors such as the jury charge language read as a whole, the decisions of other jurisdictions addressing similar arguments, how the Texas Court of Criminal Appeals has used the word

---

[8] After issuing our decision in *Marshall*, we granted the appellant's motion to reconsider publication of the opinion, making it a published opinion.

"must" and "should" in discussing jury charges that mandate acquittal, dictionary definitions of the word "should," and the fact that the jury charge at issue in that case included (in addition to self-defense instructions similar to those at issue in this case) an instruction to the jury that, if it found that "defendant was justified in her conduct based on the law of self-defense, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" *Id.* at *12-15.

In *Thomas v. State*, we again considered the use of "should" in portions of a jury charge instructing the jury on the law of self-defense and the circumstances under which the jury was required to acquit the defendant. No. 01-23-00892-CR, 2025 WL 2797603, at *3 (Tex. App.—Houston [1st Dist.] Oct. 2, 2025, pet. ref'd) (mem. op., not designated for publication). We concluded that the trial court did not err by using "should" in portions of the self-defense instructions. *Id.* at *6. Unlike in *Marshall*, no portion of the self-defense instructions in *Thomas* used what appellant characterizes as mandatory language (e.g., "must" or "will"). *Id.* at *4. However, the instructions as a whole conveyed that, if the jury made certain findings regarding self-defense, it was required—rather than merely permitted—to acquit the defendant or find him guilty. *Id.* at *4-6. Importantly, those instructions included the following statements:

> [A] person ***is justified in using force*** against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

A person *is justified in using deadly force* against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used *is not required to retreat before using deadly force*.

[Under certain circumstances,] the law *excuses or justifies such person in resorting to deadly force* by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack.

It is not necessary that there be an actual attack or attempted attack, as a person *has a right to defend his life and person from apparent danger* as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

*Id.* *4-5. Each of the foregoing statements is included word-for-word in the jury instructions at issue in the instant case, and each signals to the jury that acquittal is mandatory when self-defense applies through language such as "justified," "excuses," and "has a right." Additionally, here, as in *Thomas*, the jury instructions required that the jury "should acquit" if it found the elements of self-defense established and, if not, "should find against the defendant on the issue of self-

26

defense." *Id.* at *5. As we noted in *Thomas*, the trial court's use of "should" in both the self-defense instructions regarding when to find appellant not guilty *and* the self-defense instructions regarding when to find him guilty reinforced the mandatory nature of the challenged self-defense instructions: it would be irrational for the jury to interpret "should" as permitting it to accept appellant's defense even if it did not believe the defense or to reject appellant's defense even if it believed his defense. *Id.*

We see no reason to depart from our analysis and conclusion in *Thomas*, which considered nearly identical self-defense instructions and which applied our decision in *Marshall*. While it would have been preferable for the trial court to have used uniform mandatory language throughout its charge, we hold that the trial court's self-defense instructions are not erroneous. In the context of the jury charge as a whole, any rational jury would have understood "should" as a mandatory command, not a permissive suggestion.

We overrule appellant's fourth issue.

## Sudden Passion

After finding appellant guilty of murder, the jury rejected appellant's special issue that he had caused complainant's death under the immediate influence of sudden passion arising from an adequate cause. In his first issue, appellant contends

that the evidence is legally and factually insufficient to support the jury's negative sudden-passion finding at the punishment stage of his trial.

## A.     Standard of Review

When a criminal defendant challenges the sufficiency of the evidence supporting an adverse finding on which he had the burden of proof by a preponderance of the evidence, like sudden passion, we apply the legal and factual sufficiency standards used in civil cases. *Matlock v. State*, 392 S.W.3d 662, 668-71 (Tex. Crim. App. 2013); *Rankin v. State*, 617 S.W.3d 169, 184-86 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

Under the applicable standard for legal sufficiency, we first look for evidence that supports the jury's negative finding while ignoring contrary evidence. *Matlock*, 392 S.W.3d at 669. If no evidence supports the jury's negative finding, we examine the entire record to determine whether the evidence establishes the defense as a matter of law. *Id.* at 669-70. However, if the evidence supporting the defendant's position is subject to a credibility assessment that a reasonable jury was entitled to disbelieve, we must ignore that evidence in our matter-of-law determination. *Id.* at 670.

When reviewing the jury's negative finding for factual sufficiency, we review the entire record in a neutral light while respecting the jury's role in assessing the weight and credibility of witness testimony. *Id.* at 671. We may sustain a defendant's

28

factual-sufficiency challenge "only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.*

**B.    Analysis**

Murder is a first-degree felony. TEX. PENAL CODE § 19.02(c). However, at the punishment stage, a defendant found guilty of murder may reduce the offense to a second-degree felony if he proves by a preponderance of the evidence that "he caused the death under the immediate influence of sudden passion arising from an adequate cause." *Id.* § 19.02(d). "Sudden passion" is defined as "passion directly caused by and arising out of provocation *by the individual killed or another acting with the person killed* which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2) (emphasis added). In other words, a finding of sudden passion requires that complainant provoked appellant or that she acted in concert with another who provoked appellant. *See Vasquez v. State*, 84 S.W.3d 269, 272 (Tex. App.—Corpus Christi-Edinburg 2002, no pet.) (concluding evidence was sufficient to support jury's negative sudden-passion finding where victims did not provoke defendant or act in concert with those who did).

At trial, Massey testified that complainant slept throughout the drive in the early hours of March 19, 2016, including before and after Massey stopped at appellant's home. Only Massey called appellant that night. Complainant never called appellant that night, and she is not heard on any of Massey's calls to appellant. Appellant testified that he never heard from complainant that night. When Massey stopped at appellant's home that night, video surveillance shows only one person leaving Massey's car and walking to appellant's home before returning to the car. Massey admitted that it was she. When appellant followed Massey in his own vehicle, he did not know complainant was in the car. After the vehicles collided and paramedics arrived on the scene, appellant did not know that complainant had been shot.

On appeal, appellant does not explain under what theory complainant either provoked appellant or, assuming Massey sufficiently provoked appellant, acted in concert with Massey. At trial, appellant's counsel argued to the jury that complainant was not asleep that night because of her prior involvement in incidents between Massey and appellant. However, even if the jury believed that complainant was awake, that does not mean she acted with Massey when Massey threatened appellant and broke his bedroom window. *See Arredondo v. State*, 270 S.W.3d 676, 680 (Tex. App.—Eastland 2008, no pet.) (noting that fact of two actors' being in same room

during commission of crime, by itself, is not sufficient evidence of concerted activity).

Our sister courts of appeals have rejected arguments that merely being in physical proximity with a provocateur satisfies the requirement that the sudden passion arise "out of provocation by the individual killed or another acting with the person killed." TEX. PENAL CODE § 19.02(a)(2). In *Vasquez*, the defendant, angry and upset after someone fired shots at him from a nearby house, drove home, grabbed his gun, and returned to fire multiple shots into the house, killing a seven-year-old girl and wounding her nine-year-old sister. 84 S.W.3d at 271-72. The Thirteenth Court of Appeals concluded that the evidence was factually sufficient to support the negative sudden-passion finding because there was no evidence that the child victims "either provoked the shooting or were acting in concert with the individuals who fired shots" at the defendant. *Id.* at 272. The Texas Court of Criminal Appeals and another court of appeals have overruled challenges to trial courts' refusals to submit sudden passion to juries under similar circumstances. *See McCartney v. State*, 542 S.W.2d 156, 161 (Tex. Crim. App. 1976) (concluding that evidence was not sufficient to raise sudden passion where victim was merely walking by men who provoked defendant); *Thibodeaux v. State*, 733 S.W.2d 668, 670-71 (Tex. App.—Austin 1987, pet. ref'd) (concluding that evidence was not sufficient to raise sudden passion where victim was infant).

The evidence is legally and factually sufficient to support the jury's negative sudden-passion finding. More than a scintilla of evidence supports a finding that complainant neither provoked appellant nor, being unconscious, acted in concert with anyone who provoked appellant. Even when viewing the evidence in a neutral light, the contrary evidence does not greatly outweigh the evidence supporting the negative finding. We are not permitted to usurp the function of the jury, which was free to accept Massey's testimony that complainant was unconscious throughout the evening. *Matlock*, 392 S.W.3d at 671. Unconscious, complainant could not act in concert with Massey any more than children asleep in their home could act in concert with purported shooters. *See Vasquez*, 84 S.W.3d at 271-72.

We overrule appellant's first issue.

## Cumulative Error

In his fifth issue, appellant contends that the cumulative effect of the trial court's errors, even if harmless in isolation, deprived him of a fundamentally fair trial. "The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would." *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citation modified). However, multiple non-errors cannot "in their cumulative effect cause error." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Indeed, by definition, the doctrine cannot

apply unless appellant establishes more than one error. *Johnson v. State*, No. 10-19-00041-CR, 2020 WL 5938684, at *4 (Tex. App.—Waco Aug. 21, 2020, no pet.) (mem. op., not designated for publication) (noting the cumulative harm requires more than one error); *Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *11 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op., not designated for publication) (same). Because appellant has not established any error, his cumulative-error claim fails.

We overrule appellant's fifth issue.

## Conclusion

We affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Gunn, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).